### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ANGELIS G.,<br><br>                         Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi, Acting Commissioner of<br>Social Security,<br><br>                         Defendant. | Civil No. 3:22-CV-01377 (MEG)<br><br><br><br><br>July 14, 2023 |

### <u>RULING ON PENDING MOTIONS</u>

Plaintiff, Angelis G.[1], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Title II Disability Insurance Benefits ("DIB").  ECF No. 1.  She moves the Court for an order reversing the Commissioner's decision and for an order remanding the case for a new hearing and decision or for calculation of benefits.  ECF Nos. 1, 18, 19.  The Commissioner moves for an order affirming that decision.  ECF No. 22.

For the reasons detailed below, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 18) is **DENIED** and the Commissioner's Motion for an Order Affirming the Decision (ECF No. 22) is **GRANTED**.

---

[1]      Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On June 6, 2014, Plaintiff filed an application for DIB benefits under Title II.  (R. 161.)

She claimed that she could not work due to neck and shoulder impingements (bilateral), bone spur-

left shoulder, bulging/herniated disc, fibromyalgia, fatigue, low back pain, bilateral pain feet and

hands, anxiety, depression, and memory issues.  (R. 445, 161-62.)  She alleged a disability onset

date of June 6, 2014, when she was forty-seven years- ten months old.  (R. 161.)  Her applications

were denied initially on September 30, 2014 (R. 222-25), and upon reconsideration on October 1,

2015.  (R. 228-36.)

On July 20, 2017, ALJ I.K. Harrington issued an unfavorable decision.  (R. 193-211.)  On

May 10, 2018, the Appeals Council remanded the ALJ's decision.  (R. 217-20.)  On January 14,

2019, ALJ Harrington issued a second unfavorable opinion.  (R. 1068-86.)  The Appeals Council

denied her appeal on May 26, 2020.  (R. 1094-96.)  On July 29, 2020, Plaintiff filed an appeal in

the United States District Court, *Angelis G. v. Comm'r of Soc. Sec.,* 3:20-cv-01081-KAD.  On

April 29, 2021, the case was voluntarily remanded, on consent, under sentence four of 42 U.S.C.

§ 405(g) for additional administrative proceedings.  (R. 1113), ECF No. 20.  On December 2, 2021,

the Appeals Council remanded the ALJ's decision.  (R. 1114-17.)  A new hearing was held on

June 15, 2022 before ALJ Matthew Kuperstein.  (R. 1036-67.)

On August 31, 2022, the ALJ issued an unfavorable decision.  (R. 995-1026.)   ALJs are

required to follow a five-step sequential evaluation process in adjudicating Social Security claims

and ALJ Kuperstein's written decision followed that format.  At Step One of his analysis he found

that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2024.

(R. 1002.)  He found that since her alleged onset date,  June 6, 2014, she engaged in substantial

gainful activity during the following periods:  April 2018 to December 2019; October 2020 to

December 2020; and April 2021 to December 2021.  (*Id.*)  At Step Two, he found that Plaintiff suffers from the severe impairments of fibromyalgia ("FM"), left shoulder impingement, affective disorder, and generalized anxiety disorder.  (R. 1004.)  At Step Three, he concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. 1005.)  He then determined that, notwithstanding her impairments, Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b), except that she is limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently (lift carry described as greater at initial level); to standing or walking with normal breaks for a total of six hours in an eight hour workday; to sitting with normal breaks for a total of six hours in an eight hour workday; to only frequent climbing of ramps or stairs, stooping, kneeling, crouching, or crawling; to only occasional climbing of ladders, ropes, or scaffolds; to only frequent overhead reaching with the left upper extremity; to understanding, remembering, or carrying out simple routine and repetitive tasks for two hour periods in a normal workweek in a setting that does not require strict adherence to time or production quotas where there is only frequent interaction with the general public.

(R. 1008.)  At Step Four, the ALJ relied on the testimony from the vocational expert ("VE") to find that since July 1, 2018, and especially since November 27, 2021, Plaintiff is capable of performing past relevant work as a janitor as she actually performed the job.  (R. 1023-24.)

For the period June 6, 2014, through November 26, 2021, the ALJ proceeded to Step Five and considered Plaintiff's age, education, work experience, residual functional capacity ("RFC"), and the testimony of the VE. (R. 1024-25.)  The ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform including the representative occupations of mail clerk, laundry worker, and cleaner.  (R. 1024-25.)  Accordingly, the ALJ determined that Plaintiff

was not disabled from the date of her application, June 6, 2014, through the date of the decision, August 31, 2022.[2]  (R. 1025-26.)

## II.    APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).   To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ."  *Id.*  At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of her "past relevant work."  *Id.*  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience."  *Id.*  The claimant bears the burden of proving her case at Steps One through Four.  *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is

---

[2]    The relevant period under review for Plaintiff's DIB benefits runs from June 6, 2014, her alleged onset date, through the date of the ALJ's decision, August 31, 2022. 20 C.F.R. §§ 404.130, 404.315(a); *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989).

other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189

(2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.   DISCUSSION

Plaintiff raises one issue on appeal.  She argues that the ALJ's RFC is not supported by substantial evidence because the ALJ committed legal error in assigning weight to various opinion evidence in the record.  ECF No.18, at 2-11.  The Commissioner disagrees and argues that the ALJ did not commit legal error and substantial evidence supports his conclusions.  ECF No. 22, at 3-16.

In this case, Plaintiff challenges the weight assessed by the ALJ to the following opinion evidence: an October 24, 2014 physical capacity statement from Rheumatologist Dr. Michael Spiegel  (R. 730-38); a November 27, 2018, mental impairment questionnaire from Psychiatrist Dr. Marla Motlagh (R. 988-93); a July 3, 2014, mental impairment questionnaire from Psychiatrist Dr. Tarique Perera (R. 726-29); an April 1, 2015, mental impairment questionnaire from Linda Aragon, LCSW (cosigned by Dr. Joseph H. Williams) (R. 671-75); and a December 3, 2018, Fibromyalgia Functional Capacity Assessment from Richard Pope PA-C.  (R. 981-87.)  The Court will address each provider and the weight the ALJ assigned to his or her opinions in turn.

### A.  Evaluation of the Opinion Evidence From Treating Physicians

For claims that – like the Plaintiff's – were filed before March 27, 2017, ALJs were required to follow the treating physician rule set forth in 20 C.F.R. §§ 404.1527 and 416.927.  Under that rule, SSA claim adjudicators were instructed to afford "controlling weight" to a "medical opinion" from a "treating source" "on the issue(s) of the nature and severity of [a claimant's] impairments,"

6

provided that the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ afforded less-than-controlling weight to a "medical opinion" from a "treating source," he was required to explain his reasons for doing so in his written decision. *See id.* ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). In the Second Circuit, that explanation ordinarily required documentation of his explicit consideration of four specific factors, often called the "*Burgess* factors" after the case in which they were enumerated. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). The four factors are: (1) "the length of the treatment relationship and the frequency of examination", (2) "the amount of medical evidence supporting the opinion," (3) "the consistency of the opinion with the remaining medical evidence," and (4) "whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Selian*, 708 F.3d at 418); *see also* 20 C.F.R. §§ 404.1527(c) (describing factors to be addressed when evaluating "medical opinion[s]" from "treating source[s]"). "After considering [these] factors, the ALJ must 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). Moreover, they must be "good reasons." *Estrella*, 925 F.3d at 96 (alterations in original) (quoting *Halloran,* 362 F.3d at 32).

### 1.    *Dr. Michael Spiegel, Rheumatologist*

Plaintiff challenges the weight assessed to an opinion from Rheumatologist Dr. Michael Spiegel dated October 24, 2014. (R. 730-38.) She argues that the ALJ applied an incorrect standard for assessing FM and placed too much emphasis on Plaintiff's activities and failed to provide a rationale in his written decision to allow this Court to conduct an adequate review of the

findings.  ECF No. 18-1, at 4-6.  Defendant argues that the ALJ did not err as a matter of law and substantial evidence supports his decision.  ECF No. 22-1, at 5-8.

The ALJ afforded Dr. Spiegel's October 2014 opinion "little weight," finding that the doctor's "overall findings are not supported by his own examination and clinical findings nor the overall evidence of record, including clinical and laboratory diagnostic techniques."  (R. 1015-16.) Dr. Spiegel opined that FM would prevent Plaintiff from working for twelve months or more.  (R. 731.)  He reported that Plaintiff could never sit, stand, or walk during an 8-hour work day; could lift or carry up to five pounds occasionally (33% of the time on job); could not perform repetitive push and pull of arm or leg controls or perform fine manipulation; never squat, crawl, climb or reach or be exposed to dust or fumes; and could occasionally bend, work around machinery, drive automobiles, or be exposed to temperature changes and humidity.  (R. 732-34.)  Dr. Spiegel reported a diagnosis of severe depression, but noted that a psychiatrist should complete the form regarding her mental functioning.  (R. 734-36.)

The question for the Court is whether ALJ Kuperstein's discussion of the weight assigned to Dr. Spiegel's opinion complies with 20 C.F.R § 404.1527(c).  The Court concludes that it does. To begin with, the ALJ recognized the length of the treatment relationship and the frequency of examination. (R. 1015-16) (noting that Dr. Spiegel had treated Plaintiff from March 2014 to May 2015 and saw Plaintiff every three months).  More importantly, the ALJ extensively set forth his reasons for concluding that Dr. Spiegel's opinion was inconsistent with the other medical evidence of record and reported activities.  (R. 1016.)  The ALJ accurately noted that Dr. Spiegel's "examinations reveal relatively benign findings, outside of the claimant's subjective reporting."[3]

---

[3]    The record shows a short treating relationship, four medical records, prior to completing the October 24, 2014 physical capacity statement.  (R. 600 (6/12/14); R. 599 (6/26/14-seen to complete a disability form without examination); R. 828 (8/28/14); and R. 832-33 (10/13/14).)

(R. 1016 (citing R. 824-25, 826-27, 832-33)); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) (finding an ALJ is not required to afford controlling weight to a doctor's medical source statement when it conflicts with his own treatment notes).  He addressed the consistency of the doctor's opinion with the other evidence in the record, noting that her "examinations document her normal strength, normal gait, normal coordination, intact sensations, normal ranges of motion and intact memory and concentration skills."  (R. 1016); *see Medina v. Comm'r of Soc. Sec.,* 831 F. App'x 35, 36 (2d Cir. 2020) (summary order) (finding that the "ALJ's decision not to afford [the doctor's] opinion controlling weight as the treating physician is well-supported by the record, which contains notes showing [claimant's] improved mood and her ability to independently manage reported activities of daily life, including tasks such as cooking, cleaning, self-care, banking, shopping and driving without assistance."); *Salinovich v. Comm'r of Soc. Sec. Admin.,* 783 F. App'x 67, 68 (2d Cir. 2019) (summary order) (affirming the District Court finding "that substantial evidence supports the ALJ's decision to afford only some weight to [the doctor's] opinion, which was inconsistent with his contemporaneous treatment notes, [another doctor's] assessment, and [claimant's] own testimony at the administrative hearing" describing her activities.).  Citing thirteen exhibits, the ALJ explained that Plaintiff "described going for walks, attending her grandson's weekly soccer games, exercising three to five times per week and working as an overnight cleaner for Planet Fitness."  (R. 1016 (citing R. 683-84, 687, 959, 967, 970, 973, 1429, 1499, 1508, 1517, 1553-54, 1598).)  Plaintiff may disagree with these conclusions, but she cannot plausibly charge the ALJ with the legal error for failing to provide an adequate explanation.  The Court concludes that, in explaining his reasons for assigning little weight to Dr. Spiegel's opinion, the ALJ complied with his obligations under § 404.1527(c).

### a. Evaluation of Fibromyalgia

Plaintiff next argues that the ALJ erred in his evaluation of her FM.  ECF No. 18-1, at 5-6.  For the reasons that follow, the Court disagrees.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Soc. Sec. Ruling 12-2p, 2012 WL 3104869, at *2 (SSA July 25, 2012) (hereinafter "Ruling 12-2p").  As Plaintiff correctly notes, an ALJ may not rely on a lack of abnormal objective findings in the case of fibromyalgia diagnosis.  ECF No. 18-1, at 5.  Fibromyalgia "symptoms are subjective and therefore elude objective measurement."  *Ortiz v. Colvin*, Civ. No. 3:13-cv-610(JGM), 2014 WL 819960, at *12  (D. Conn. Mar. 3, 2014) (citing *Montanez v. Astrue*, No. 3:07-cv-01039 (MRK) (WIG), 2008 WL 3891961, at *17 (D. Conn. Aug. 1, 2008)).   And as the Second Circuit has observed, "there are no objective tests which can conclusively confirm the disease."  *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)).   "[P]hysical examinations will usually yield normal results." *Id.*

The SSA has provided guidance to ALJs on how to evaluate disability claims arising out of this unique disease.  Ruling 12-2p.  The process begins by considering whether the claimant's fibromyalgia constitutes a medically determinable impairment, or "MDI."  *Id.* at *2.  The SSA "will find that a person has an MDI of [fibromyalgia] if the physician diagnosed [fibromyalgia] and provides the evidence" listed elsewhere in the guidance, "and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."  *Id.*  If the SSA concludes that the claimant's fibromyalgia constitutes an MDI, the analysis proceeds to a second step, at which the agency "evaluate[s] the intensity and persistence of the person's pain or any other symptoms

and determine[s] the extent to which the symptoms limit the person's capacity for work." *Id.* at *5. "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms," the agency "consider[s] all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate the symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." *Id.*

Thus, to the extent that Plaintiff is suggesting that there is little or no role for objective medical evidence in evaluating fibromyalgia-based disability claims, she is mistaken. "[I]f the objective medical evidence is inconsistent with plaintiff's testimony regarding her functional limitations, the ALJ will 'consider *all* of the evidence in the case record'" – the objective and the subjective alike. *Christine M.R. v. Saul*, No. 3:19-cv-01752 (SALM), 2021 WL 129415, at *18 (D. Conn. Jan. 14, 2021) (emphasis added) (citing *Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-cv-00271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020)). In particular, an ALJ may properly consider objective medical evidence of the range of motion in a claimant's joints. *See* Ruling 12-2p, at *5 (authorizing ALJs to consider "objective evidence"); 20 C.F.R. § 404.1529(c)(2) (defining "objective medical evidence" to include "evidence of reduced joint motion"). He may also consider the degree to which "medications . . . alleviate the symptoms," and he may likewise consider "the person's daily activities." Ruling 12-2p, at *5.

The question, therefore, is whether the ALJ considered *all* of the evidence in the record – the objective and the subjective alike – and otherwise complied with Ruling 12-2p. *Christine M.R.*, 2021 WL 129415, at *19 ("[T]he pertinent question before the Court is whether the ALJ adhered to SSR 12-2p in evaluating plaintiff's fibromyalgia."). The Court concludes that he did. First, the

11

ALJ found that the Plaintiff's fibromyalgia is a severe impairment. (R. 1004.) He next considered the objective evidence and concluded that her allegations of "disabling FM and mental impairments and worsening symptoms are not corroborated by the overall evidence of record, including mental, psychiatric and physical examinations." (R. 1013.)

Having reached this conclusion, Ruling 12-2p required him to consider all of the evidence in the record, including "the person's daily activities, medications or other treatments the person uses, or has used, to alleviate the symptoms". Ruling 12-2p, at *5. The ALJ considered Plaintiff's daily activities noting that, among other things, she worked part-time as an overnight janitor, attended her grandson's weekly soccer games, "working out three to five times per week", "maintaining her activities of daily living", "using a backpack style vacuum cleaner at work", walking 12,500 to 20,000 steps while working, and demonstrated "intact upper extremity strength bilaterally." (R. 1013, 1016.) He considered the degree to which Plaintiff's symptoms were alleviated by medication citing medical records confirming that she "acknowledged that her Cymbalta medication and individual therapy helped with her pain" and that "[e]ven after her Cymbalta medication dosage was decreased, she continued to present with stable depression and FM symptoms." (R. 1013.) In short, he did what the ALJ in *Christine M.R.* did – he "followed the steps set forth in" Ruling 12-2p by "properly consider[ing] *more* than just the objective evidence." 2021 WL 129415, at *20. Here, as in that case, the "ALJ committed no error." *Id.*

### 2.   *Dr. Maria Motlagh, Psychiatrist*

Plaintiff next challenges the weight assessed to the opinion of Psychiatrist Dr. Maria Motlagh dated November 27, 2018.[4] (R. 988-93), ECF No. 18-1, at 6-8. Dr. Motlagh opined that

---

[4]   Plaintiff was seen for medication management on seven occasions between November 20, 2017 through December 17, 2018. (R. 973, 970, 967, 963, 959, 955, 1476.)

Plaintiff had an unlimited/very good ability to remember work-like procedures; understand and remember and carry out very short and simple instructions; maintain attention for a two hour segment; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; adhere to basic standards of neatness and cleanliness.  (R. 990-93.)  She opined that Plaintiff had at least a fair[5] ability to maintain regular attendance and be punctual within customary usually strict tolerances; make simple work-related decisions; ask simple questions or request assistance; respond appropriately to changes in a routine work setting; deal with normal work stress; be aware of normal hazards and take appropriate precautions; interact appropriately with the general public; maintain socially appropriate behavior; travel in unfamiliar places; and use public transportation; she would often have deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work settings and elsewhere and she had repeated (three or more) episodes of deterioration or decompensation in work or work-like settings that which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.  (*Id.,* at 991.)  She found that Plaintiff had an inadequate[6] ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an

---

[5]        "Fair" is defined as "[s]ome loss of ability to perform the named activity but still capable of performing it in regular competitive employment."  (R. at 991.)

[6]        "Inadequate" is defined as "[s]ubstantial loss of ability to perform the named activity in regular, competitive employment, *and* in a sheltered work setting: could do so only to meet basic needs at home."  (R. at 991.)

unreasonable number and length of rest periods and deal with normal work stress.  (*Id.*)  The doctor opined that Plaintiff would be absent from work about three times a month. (*Id.*, at 990, 992.)

Plaintiff argues that the ALJ erred because he "failed to recognize the inherently subjective nature of mental impairments, and the necessity of reliance, at least in-part, on a claimant's subjective reporting."  ECF No. 18-1, at 8.  She notes that, although, she reported "some improvement, Dr. Motlagh noted Plaintiff continued to have suicidal intent."  (*Id.*, at 7 (citing R. 959).)

The ALJ afforded Dr. Motlagh's November 2018 opinion "little weight," and provided good reasons for his decision, explaining that the doctor's overall findings are not supported by her own mental status and psychiatric examinations and clinical findings nor the overall evidence of record, including clinical and laboratory diagnostic techniques.  (R. 1021.)  The ALJ addressed the length of the treatment relationship and frequency of examinations and the amount of medical evidence supporting the doctor's opinion.  He accurately explained that the doctor's treatment notes document "stable and improved FM related pain and anxiety symptoms with medication management and therapy" and "reflect relatively benign examination findings."  (R. 1011; 1021 (citing R. 955, 959, 963, 967, 1476)); *see Netter v Astrue,* 272 F. App'x 54, 56 (2d Cir. 2008) (ALJ may consider a claimant's conservative treatment as additional evidence supporting the ALJ's determination, so long as the ALJ's consideration is not used as "compelling" evidence to overcome an "otherwise valid medical opinion.").  The ALJ further explained that the doctor's records did not reflect that she was "referred to higher levels of mental health care" or "support that she would be regularly absent from work, unable to complete a normal workday and workweek or unable to deal with normal work stress."  (R. 1021; *see* R. 1007 ("The claimant's lack of psychiatric hospitalizations and need for higher level of care do not support Dr. Motlagh's finding

that the claimant had 'repeated episodes of decompensation.'") (citing R. 963, 967, 970, 973).)
The ALJ also stated that throughout the treatment relationship, the doctor noted that Plaintiff
"demonstrated better moods, a cooperative demeanor, good insight and judgment, intact recent
and immediate memory skills, intact thought process, average intelligence and good impulse
control." (R. 1011 (citing R. 956, 960, 965, 971, 974-75).) Plaintiff misstates Dr. Motlagh's
treatment note from June 7, 2018. Rather, the doctor stated that Plaintiff reported "doing fine",
she was working out five times a week for more than one hour and continued to be employed. (R.
959.) Her fibromyalgia symptoms were "better". (*Id.*) She denied suicidal and homicidal ideation,
"[a]t times she has passive [suicidal ideation]." (*Id.*) She "denied any new symptoms" and was
compliant with her medication. (*Id.*)

   The ALJ also considered the consistency of Dr. Motlagh's opinion with the other evidence
of record. He explained that the evidence of record did not support that Plaintiff could not maintain
a regular schedule or positively interact with employees citing to the "lack of a need for a higher
level of care and her improved symptoms with treatment." (R. 1020-21 (citing treatment records).)
The ALJ explained what caused him to conclude this: he cited documents showing that Plaintiff
was able to work a 20 hour workweek at a SGA level without accommodations or special
assistance, and had intact neurological sensory, vibration, and temperature examinations at the
time the doctor rendered her opinion and noted the "lack of evidence supporting that she missed
work, was unable to perform her janitorial duties or was off-task during her shift" or that she
needed to "avoid noise and temperature extremes."[7]  (R. 1002-03; 1020-21); 20 C.F.R. §
404.1520(a)(4)(i) ("If you are doing substantial gainful activity, we will find that you are not

---

[7]     Plaintiff does not challenge the ALJ's finding that she engaged in substantial gainful
activity during the relevant time period. (R. 1002-03, 1021.)

disabled."); 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work that you actually did."); *see Banyai v. Berryhill*, 767 F. App'x 176, 179 (2d Cir. 2019), *as amended* (Apr. 30, 2019) (finding that substantial evidence, "particularly [claimant's] work history", supported the district court's finding of not disabled.).

The ALJ also explained that the "longitudinal examinations" by other health providers revealed "normal cognitive functioning, intact memory and concentration skills, intact thought processes, intact insight and judgment and good impulse control." (R. 1021 (citing treatment records).) As demonstrated above, the ALJ did not commit legal error and provided "good reasons" for assigning "little weight" to Dr. Motlagh's opinion and complied with his obligations under § 404.1527(c).

### 3.     Dr. Tarique Perera, Psychiatrist

Plaintiff next challenges the weight assessed to the opinion of Psychiatrist Dr. Tarique Perera dated July 3, 2014.[8]  (R. 726-29); ECF No. 18-1, at 8-9.  The doctor opined that Plaintiff had "no problem" interacting appropriately with others in a work environment and respecting/responding appropriately to others in authority; a "slight problem" using good judgment regarding safety and dangerous circumstances, asking questions or requesting assistance, getting along with others without distracting them or exhibiting behavioral extremes and carrying out single-step instructions.  (R. 727-28.)  He opined she had an "obvious problem" handling frustration appropriately, carrying out multi-step instructions, focusing long enough to finish assigned simple activities or tasks; and she had a serious or very serious problem taking care of

---

[8]     Plaintiff was seen for medication management on *seven* occasions between May 8, 2014 and September 18, 2014.  (R. 602-04; 605; 607; 609; 610; 611; 612.)  The doctor's opinion was provided on July 3, 2014, the date of their *fourth* appointment.  (R. 609; 726-29.)

personal hygiene, caring for personal needs, using appropriate coping skills to meet ordinary demands of a work environment, changing from one simple task to another, and performing work activity on a sustained basis.  (*Id.*)

Plaintiff argues that it was error to assess the doctor's opinion as vague because it does not constitute "good reasons" for discounting the doctor's opinion given the ALJ's duty to develop the record.  ECF No. 18-1, at 8-9.

The ALJ afforded Dr. Perera's opinion "little weight," and provided good reasons for his decision.  (R. 1018.)  The ALJ recognized the length of the treating relationship, finding that the doctor had a "limited treating relationship with the claimant prior to completing this assessment." (*Id.*) (noting that the doctor saw Plaintiff "less than one month prior to her alleged onset date" and provided his opinion "less than one month after the alleged onset date).  And he also found that the limited treating relationship showed that the doctor had not seen Plaintiff with a "frequency consistent with acceptable medical practices for the type of treatment and/or evaluation required for her medical conditions."  (*Id.* (noting that Dr. Perera's "degree of limitations are not well supported by medically acceptable clinical and laboratory diagnostic techniques from this individual nor any other acceptable medical source for any ongoing twelve-month period since the claimant's alleged onset date.").  Perhaps most importantly, the ALJ extensively set forth his reasons for concluding that Perera's opinion was inconsistent with the other "medical evidence of record." (*Id.*)  He explained that the "longitudinal examinations" documented "normal memory and concentration skills; intact thought processes, average intelligence, good impulse control and intact insight and judgment." (*Id.* (*citing* treatment records).)  And he also found that psychiatric examination notes and reported activities did not support a greater level of functional limits described by the doctor.  (*Id.* (noting that symptoms became manageable with treatment and her

ability to work demonstrated "she can understand, remember or carry out simple routine and repetitive tasks for two-hour periods in a normal workweek") (citing treatment records).)  Finally, the ALJ considered that Plaintiff was able to work at substantial gainful activity levels during the relevant period, which is not consistent with the limitations found in Dr. Perera's opinion.  (R. 1002-02; 1018); *see*  20 C.F.R. § 404.1520(a)(4)(i); 20 C.F.R. § 404.1571.  The Court concludes that, in explaining his reasons for assigning little weight to Dr. Perera's opinion, the ALJ met his obligations under 20 C.F.R. § 404.1527(c).

### B.   Evaluation of the Opinion Evidence From Other Sources

Plaintiff challenges the weight assessed to the April 1, 2015 opinion provided by LCSW Linda Aragon and co-signed by Dr. Joseph Williams (R. 671-75) (ECF No. 18-1, at 8-9) and argues that the ALJ erred when he afforded "little weight" to the opinion of Physician Assistant Richard Pope.  ECF No. 18-1, at 9-11.

To be entitled to controlling weight under the then-existing regulations, an opinion had to be a "medical opinion" from a "treating source."  20 C.F.R. § 404.1527(c)(2)(effective Sept. 3, 2013 – March 26, 2017).  But these rules did not apply to the opinions of a licensed social worker or physician's assistant.  And under the regulations' definitions of those terms, to qualify as a "medical opinion" from a "treating source," the opinion had to come from an "*acceptable* medical source."  20 C.F.R. § 404.1527(a) (emphasis added).  At all times relevant to Plaintiff's claim, the definition of  "acceptable medical source" included "[l]icensed physicians" but not licensed social workers or physician assistants.  20 C.F.R. § 404.1513(a)(1) (effective Sept. 3, 2013 – March 26, 2017); *see also* SSR 06-3p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.") (rescinded effective March 27, 2017).   As the Second Circuit has

explained, "while the ALJ is certainly free to consider" the opinions of a licensed social worker or physician's assistant "in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Grenier v. Astrue*, 298 F. App'x 105, 108-09 (2d Cir. 2008) (summary order).

Of course, this does not mean that the ALJ could disregard the opinions of a licensed social worker or physician's assistant without explaining himself in any way. The regulations provided that, when the record contained "[o]pinions from medical sources who are not acceptable medical sources," "[t]he adjudicator generally should explain the weight given to [these] opinions." 20 C.F.R. §§ 404.1527(f), 416.927(f). "But no authority required the ALJ to explain the weight he assigned to a [licensed social worker or] physician's assistant's opinion with the same level of detail" required when assigning less-than-controlling weight to a LCSW or physician's opinion, and Plaintiff does not cite to any. To the contrary, when assigning weight to "[o]pinions from medical sources who are not acceptable medical sources," the ALJ was required only to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* "In particular, he was not obliged to discuss all of the factors listed in 20 C.F.R. § 404.1527(c) – the factors mirrored in *Burgess* and *Estrella* – because "not every factor for weighing opinion evidence will apply" to every such opinion." 20 C.F.R. § 404.1527(f)(1), 416.927(f)(1).

The question, therefore, is whether ALJ Kuperstein's discussion of the weight assigned to LCSW Linda Aragon and PA Mathew's opinions "allows" the Plaintiff or the Court "to follow [his] reasoning," and otherwise complies with 20 C.F.R. §§ 404.1527(f). The Court concludes that it does.

1.      **LCSW Linda Aragon, co-signed by Dr. Joseph Williams**

Plaintiff argues that the ALJ erred by "discounting the opinion simply because Ms. Aragon was not an acceptable medical source" and contends that "Dr. Williams['] authorization effectively made her an acceptable medical source."  ECF No. 18-1, at 8.  She further objects to the ALJ's statement that the terms "sometimes" and "reduced" used in the opinion were "somewhat vague and not posed in vocationally relevant terms."  (*Id.*)  Ms. Aragon and Dr. Williams found that Plaintiff would "sometimes" have a problem or "reduced ability" in activities of daily living, social interactions and task performance. [9]  (R. 673-74.)

The ALJ afforded LCSW Aragon and Dr. William's opinion "some weight" and articulated "good reasons" for that assessment.  (R. 1019.)  First, he explained that Dr. Williams did not treat Plaintiff.  (R. 1019.)  And, Plaintiff fails to cite to any medical records documenting treatment from Dr. Williams.  *See Arnone v. Bowen*, 882 F2d 34, 41 (2d Cir. 1989) (affording no deference to a physician's opinion where there was no indication that the doctor ever saw the claimant during the claimed period of disability).  Next, he observed that Ms. Aragon is not an "acceptable medical source."  (R. 1019.)  Nevertheless, the ALJ accepted "their overall findings" that Plaintiff was "limited in her ability to perform and persist at tasks and interact appropriately with other (the public) as those portions of their assessments are generally supported by the overall evidence of record, which document her memory and concentration/focus difficulties, brain fog, anxious and depressed moods, fatigue and social isolative tendencies."  (*Id.*)  And he cited treatment notes and mental status exams documenting these reported symptoms.  (*Id.* (citing treatment records).)  The ALJ took the added step and incorporated these limitations in the RFC.  (R. 1008 (limiting her "to

---

[9]      Plaintiff was seen for therapy with Ms. Aragon from December 16, 2014 through June 19, 2015.  (R. 676-703.)  Ms. Aragon and Dr. Williams' opinion was provided on April 1, 2014, the date of the twelfth appointment with Ms. Aragon.  (R. 676-79; 693.)

understanding, remembering, or carrying out simple routine and repetitive tasks for two hour periods in a normal workweek in a setting that does not require strict adherence to time or production quotas where there is only frequent interaction with the general public.").)  The Court concludes that, in explaining his reasons for assigning some weight to Ms. Aragon and Dr. Williams' opinion, the ALJ met his obligations under 20 C.F.R. § 404.1527(f).

### 2.      Physician Assistant Richard Pope

PA Pope completed a Fibromyalgia Functional Capacity Assessment form on December 3, 2018 (R. 981-87.)  He opined that Plaintiff's symptoms would interfere with attention and concentration over two-thirds of an eight hour workday and that she was "incapable of even 'low stress' jobs"; she could sit, stand or walk no more than a half-hour a day for a total of two hours a day; would require three to four unscheduled half-hour breaks and require several unscheduled half-hour periods to lie down per eight hour workday; could occasionally lift no more than five pounds; had significant limitations in repetitive reaching, handling and fingering; could rarely to occasionally move her neck; could twist or bend for five percent of the workday; would be absent more than three times a month; and needed to avoid wetness, noise, fumes, temperature extremes, humidity, dust, gas and heights.  (R. 984-87.)

Plaintiff contends that the ALJ made identical errors to those made in his consideration of Dr. Spiegel's opinion.  ECF No. 18-1, at 9.  In other words, she argues that the ALJ erred in considering the opinion's inconsistency with unremarkable physical examination findings as well as Plaintiff's reported work and daily activities.  (*Id.*).  She also argues that although an opinion from a physician assistant is not entitled to controlling weight, an ALJ should apply the same factors set forth in SSR 06-03p as it would to analyze the opinion of an acceptable medical source.

ECF No. 18-1, at 10-11.  Defendant argues that the ALJ did not err and substantial evidence supports his conclusions.  ECF No. 22-1, at 8-11.

The question for the Court is whether ALJ Kuperstein's discussion of the weight assigned to PA Pope's opinion "allows" the Court to "follow [his] reasoning" and otherwise complies with 20 C.F.R. § 404.1527(f).  The Court concludes that it does.  To begin with, the ALJ did not err in considering that PA Pope was not an acceptable medical source under the regulations in effect at the time of the alleged onset date.  (R. 1016.)  He found that PA Pope's opinions were inconsistent with his own treatment records.  (*Id.* (noting PA Pope's treatment records "reveal the claimant's 18/18 trigger point, but relatively benign findings.").)  Importantly, the ALJ extensively set forth his reasons for concluding that PA Pope's opinion was inconsistent with the other medical evidence of record and reported activities.  (*Id.*)  Citing over thirty exhibits, the ALJ explained that Plaintiff's "examinations document her normal strength, normal gait, normal coordination, intact sensations, normal ranges of motion and intact memory and concentration skills."  (R. 1016-17.)  He noted, with citations to the record, that Plaintiff reported "going for walks, attending h[er] grandson's weekly soccer games, exercising three to five times a week and working as an overnight cleaner at Planet Fitness" at SGA levels.  (R. 1017.)  The ALJ also found that PA Pope's assessment that Plaintiff was unable to perform more than sedentary work or complete a work month was inconsistent with her work history during this period.  (*Id.* ("there is no objective evidence to support that she was regularly absent or unable to perform her job tasks.").)  The Court concludes that, in explaining his reasons for assigning little weight to PA Pope's opinions, the ALJ met his obligations under 20 C.F.R. § 404.1527(f).

### C.      The ALJ's RFC is Supported by Substantial Evidence

For the foregoing reasons, the ALJ did not err in assigning weight to the various treating physicians, LCSW and physician assistant.  As the ALJ explained in his opinion, his RFC assessment took into account the opinions of all of these treatment providers as well as the opinions of State agency consultants Drs. Bernstein and Leveille, benign physical and medical evidence, evidence that Plaintiff's symptoms were controlled with treatment, ADLs, including work activity at SGA levels during the disability period under review.  An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Substantial evidence in the record supports the ALJ's conclusion that Plaintiff is able to perform light work with limitations.  (R. 1008, 1023-24.)  Since the Court finds that substantial evidence supports the ALJ's decision, it must be upheld.  *See Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008); *see also Traci R. o/b/o E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-cv-607 (DNH) (TWD), 2022 WL 4354367, at *6 (N.D.N.Y. Sept. 20, 2022), *report and recommendation adopted sub nom. Traci May R. on behalf of E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-cv-607, 2022 WL 12318225 (N.D.N.Y. Oct. 20, 2022) ("Under the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[,]" as "substantial evidence means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" (internal quotation marks and citation omitted)).

### IV.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ did not err as a matter of law and his decision was supported by substantial evidence.  As such, Plaintiff's Motion for Order Reversing

the Commissioner's Decision (ECF No. 18) is **DENIED**.  The Commissioner's Motion for an Order Affirming the Decision (ECF No. 22) is **GRANTED**.

The Clerk is directed to enter judgment in favor of Defendant and close the case. The Clerk is further instructed that, if any party subsequently appeals to this court the decision made after remand, that Social Security appeal shall be assigned to me (as the Magistrate Judge who issued the ruling that remanded the case).

This is not a recommended ruling.  The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  (ECF No. 12.)  Appeals may be made directly to the appropriate United States Court of Appeals.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).  It is so ordered.

*/s/ Maria E. Garcia, U.S.M.J.*

Hon. Maria E. Garcia
United States Magistrate Judge